SECURITIES INVESTOR PROTECTION
CORPORATION, Plaintiff,

v.

STRATTON OAKMONT, INC., Defendant.

No. 97–8074–A TLB.

United States Bankruptcy Court,
S.D. New York.

Jan. 13, 1999.

Weil, Gotshal & Manges LLP, New York City, by Adam C. Rogoff, Jonathan S. Henes, for Harvey R. Miller, trustee for the Liquidation of Stratton Oakmont.

Maddox, Koeller, Hargett & Caruso, New York City, by Steven B. Caruso, Thomas A. Hargett, for Customer claimants.

Securities Investor Protection Corporation, Washington, D.C., by Josephine Wang.

*Corrected Text of Bench Ruling of October 19, 1998 Granting Trustee's Motion for an Order Upholding his Determinations Denying "Customer" Status to Claimants*

TINA L. BROZMAN, Chief Judge.

The Trustee of Stratton Oakmont, Inc. ("Stratton") seeks an order upholding his determination that 57 individuals who filed claims (the "Claimants") are not "customers" of a broker-dealer undergoing liquidation in accordance with the Securities Investor Protection Act of 1970, as amended ("SIPA"), 15 U.S.C. § 78eee(b)(1).

## I.

Shortly after Stratton's expulsion from the National Association of Securities Dealers ("NASD"), it filed, on January 24, 1997, for relief under chapter 11 of the Bankruptcy Code. Five days later, upon the application of the Securities Investor Protection Corporation ("SIPC"), the Honorable John E. Sprizzo of the United States District Court for the Southern District of New York entered an order (the "Protective Decree") adjudicating the customers of Stratton in need of protection under SIPA; staying Stratton's chapter 11 case; appointing Harvey R. Miller as trustee (the "Trustee") for the purpose of liquidating the business of Stratton pursuant to § 78eee(b)(3) of SIPA; appointing Weil, Gotshal & Manges as counsel to the Trustee; and removing the SIPA liquidation proceeding (the "SIPA Proceeding") to this court pursuant to § 78eee(b)(4).

In February 1997, claim forms were sent to approximately 22,000 individuals in accordance with the so-called "Housekeeping Order" entered on February 6th. Accompanying the claim forms were a notice of the commencement of the SIPA Proceeding, a brochure about SIPC and instructions on how to complete the claim form seeking customer status. *See* Volumes One and Two of Trustee Exhibit Appendix and Claimants' Exhibits 11, 12 and 17, respectively. From the face of the claim form, it is apparent that a claimant was directed to follow those instructions in filling out the form and submitting his or her claim by the last day to file such claims. Pursuant to the Housekeeping Order, the Trustee reviewed the claims; determined whether or not a claimant was a "customer" entitled to preferential treatment under SIPA; and notified the claimant of that determination by letter (the "Determination Letter"). Under the procedures established, a claimant has thirty days to object in writing to the Trustee's determination. However, if a claimant fails to object or

objects but fails to appear at the hearing scheduled on his or her matter, the Trustee's determination will be deemed confirmed by this court.

The objections filed by the Claimants are identical form objections asserting that "Stratton Oakmont converted the Claimant's securities by refusing to sell these securities on demand and/or exercising dominion and control over the securities to the exclusion of the Claimant [("Failure to Sell Claim")]." *See* Volume One of Trustee Exhibit Appendix. Generally, the Claimants only submitted the form objection letter without any additional documentation, such as a confirmation letter, to support their claims of Stratton's failure to sell. In a dozen or so cases, the Claimant submitted a sworn affidavit recounting his or her instructions to his or her registered representative at Stratton to execute sales; however, these submissions still lacked any documentary support. *See* Volume One, Tab 3 of Trustee Exhibit Appendix, Claim Numbers 3272, 2272, 2361, 2711, 2588, 2729, 1218, 2728, 3214, 2606, 2288, 2295, 324 and 286. There are a few exceptions. Claude Stemp (Claim # 125) annexed over 25 pages of letters, facsimile transmissions to his registered representative at Stratton, confirmation statements of trades cleared through J.B. Oxford[1] and canceled checks made out to Stratton. There are also confirmation reports for other claimants submitted by the Claimants to show that Stratton obviously held their funds because it required checks to be made out to it. In total, there are about 14 Claimants for which, either submitted in conjunction with their own objection or by the Claimants, there exists additional documentation in the form of confirmation reports, account statements and/or canceled checks. *See* Volume One, Tab 6 of Trustee Exhibit Appendix, Claim Numbers 2093, 3181, 1892, 532, 2607, 2588, 2729, 2705 and 2707 and Claimants Exhibit 15, Claim Numbers 2442, 2593, 3241, 2709 and 2440, respectively.

The Trustee denied all of these claims on the basis that those with failure to sell claims are not customers under SIPA. Additionally, the Trustee asserts that these Claimants are not customers because their securities were not entrusted to or held by Stratton and their losses were not occasioned by the insolvency of the debtor.

## II.

All of the Claimants are represented by the same counsel, through which they all appear to oppose the Trustee's motion. They advance several arguments to support their customer claims. First, they argue that the Trustee is estopped from denying them customer status because SIPC previously asserted that all of the customers of Stratton were in need of protection under SIPA and it is because of this need that the Protective Decree was entered. Stratton is a member of SIPC whose protection was made known to the Claimants and therefore, so the argument runs, cannot now be rescinded. Next, the Claimants refer to the Trustee's interim reports to this court and the fact that the sixth report uses the term "investor" whereas all the previous ones used the term "customer." The Claimants attempt to draw a negative inference from this change in usage particularly because it occurred after the present motion was filed. They argue that the Trustee is now estopped from characterizing them differently. The Claimants question why the Trustee has requested funds from SIPC if the Claimants are not customers. They ask why, if there are no customers of Stratton, the Trustee settled with two of its former customers? Lastly, with respect to the estoppel argument, the Claimants argue that the notices sent out by the Trustee were misleading because they did not indicate that a former Stratton client could potentially be denied benefits under SIPA.

## III.

### A. *Estoppel*

I will deal with the estoppel argument first because I can make short shrift of it. Its premise is wrong; neither the Trustee nor SIPC has claimed that Stratton had no customers within the protective reach of

---

1. J.B. Oxford was Stratton's clearing broker.

the statute. Indeed, the Trustee has accepted some customer claims. More importantly, nowhere in SIPA does it state that all clients of a broker-dealer undergoing liquidation are to be treated equally or that SIPA protection is an all or nothing proposition. *See In re Hanover Square Securities,* 55 B.R. 235, 238 (Bankr.S.D.N.Y.1985); *In re Adler, Coleman Clearing Corp.,* 195 B.R. 266, 273 (Bankr. S.D.N.Y.1996) ("SIPC's role in a SIPA liquidation is limited by statute; it does not attempt to make all customers whole.") Preferential treatment under SIPA is precisely that: preferential. "Affording customer status ... [allows] the claimant's debt to be satisfied from monies advanced to the trustee by SIPC," *Hanover,* 55 B.R. at 238 (*citing* 15 U.S.C. § 78fff–3(a)), whereas denying "customer" status relegates an investor to the status of a general unsecured creditor of the debtor's estate. *See Adler, Coleman,* 195 B.R. at 270 ("SIPA liquidations generally involve customer claims and claims of general unsecured creditors which are satisfied out of a customer estate and general estate, respectively.").

■ "Customers" are satisfied first from an estate made up of customer assets from which general unsecured creditors may not be paid. *See id.* SIPC will advance funds to the trustee, no more than $500,000 per customer, only $100,000 of which may be based on a customer claim for cash, as opposed to securities, as necessary to enable him to satisfy customer claims, within the limits of SIPA protection. SIPC is then subrogated to those creditor/customers to the extent of its advances, which must be repaid from the general estate before any distribution to unsecured creditors. · *See* 15 U.S.C. §§ 78fff(a), 78fff–2(c)(1) and 78lll(11); *Adler, Coleman,* 195 B.R. at 270 (citing cases); *Hanover,* 55 B.R. at 237.

■ SIPA protection is not an absolute privilege but a qualified one which depends primarily on the nature of the claim and the purpose of the client's account with the defunct broker-dealer. *See In re Adler, Coleman Clearing Corp.,* 216 B.R. 719, 725 (Bankr.S.D.N.Y.1998); *Hanover,* 55 B.R. at 240. But not all investors are customers; moreover, an investor can be a customer vis-

a-vis certain transactions but not others. *See Adler, Coleman Clearing Corp.,* 204 B.R. 111, 115 (Bankr.S.D.N.Y.1997) ("By design, SIPA focuses on the specific securities or transactions that are the subject of a claim."); *SIPC v. Wise (In re Stalvey & Associates, Inc.),* 750 F.2d 464, 471 (5th Cir.1985) (*citing In re S.E.C. v. F.O. Baroff,* 497 F.2d 280, 282 n. 2 (2d Cir.1974)) ("the Act contemplates that a person may be a 'customer' with respect to some of his claims for cash or shares, but not with respect to others."). Neither the statute nor its objectives have been undermined by the Trustee's determination that some of Stratton's previous clients are "customers" pursuant to SIPA and that others are not. *See Hanover* 55 B.R. at 238 ("SIPA does not protect all creditors of a brokerage firm against all losses in the event of the demise of the firm."); *SEC v. Packer Wilbur & Co.,* 498 F.2d 978, 983 (2d Cir.1974).

■ Simply because SIPC asserted that the customers of Stratton were in need of SIPA protection does not mean that it considered within the embrace of that term all persons who invested through Stratton. Moreover, when SIPC files a complaint, it does so as a protective measure in the interest of all investors who may fit within the SIPA rubric, *see Hanover,* 55 B.R. at 237 ("its main function is to liquidate a broker or dealer when customers' assets are in danger"); it has no way of knowing beforehand how many investors will be entitled to SIPA protection especially because the trustee will not yet have performed his or her review of the debtor's books and records. *See* 15 U.S.C. § 78fff–2(b); *Adler Coleman,* 195 B.R. at 270 ("A SIPA trustee discharges a debtor's obligations to customers to the extent that they may be determined to the trustee's satisfaction from the debtor's books and records."). In any event, a subsequently-appointed trustee ought not be bound by SIPC's assertions.

■ A broker or dealer automatically becomes a member of SIPC upon registration as a broker or dealer with the Securities and Exchange Commission under § 15(b) of the Securities Exchange Act of 1934. *See* 15 U.S.C. § 78eee(a)(2)(A). There is no dispute

that Stratton was a member of SIPC; however, SIPA offers only limited protection and membership in SIPC does not guarantee every investor's loss. *See Adler, Coleman,* 195 B.R. at 273; *In re Brentwood Securities, Inc.,* 925 F.2d 325, 330 (9th Cir.1991); *SIPC v. Morgan, Kennedy & Co., Inc.,* 533 F.2d 1314, 1317 n. 4 (2d Cir.) (SIPA not designed to accord full compensation to all injured by brokerage collapse), *cert. denied sub nom. Trustees of the Reading Body Works, Inc. v. SIPC,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *SEC v. Packer, Wilbur & Co., Inc.,* 498 F.2d 978, 983 (2d Cir.1974) ("SIPA was not designed to provide full protection to all victims of a brokerage collapse"); *Matter of Bevill, Bresler & Schulman, Inc.,* 83 B.R. 880, 886 n. 3 (D.N.J.1988) ("SIPC's role is carefully delineated, and the corporation does not attempt to make all customers whole").

■ Furthermore and significantly, "customer" is a term of art when it comes to SIPA protection. *See Adler, Coleman,* 204 B.R. at 115; *Hanover,* 55 B.R. at 238 (*citing In re Stalvey & Associates,* 750 F.2d at 468). The term customer is often used in its colloquial sense, as someone who buys goods, *see Adler, Coleman,* 216 B.R. at 724; *Hanover,* 55 B.R. at 238, which only leads to confusion when that word is then used in the context of SIPA "customer" claims, which is probably why the Trustee chose to use the term investor instead in his latest report. Fortunately, estoppel by diction is not yet a recognized equitable remedy.

Lastly, the notice is not misleading in that it specifically states that customers "must file a claim in order to assure the availability of the protection afforded under SIPA." Availability does not connote security or assured coverage. This sentence puts the reader on notice that qualification for SIPA protection can only be determined once a claim has been filed. It is the filing of the claim which avails the claimant of the determination process. The Claimants are incorrect to read this sentence to mean that filing a claim is the first and only step in that process. *See Adler, Coleman,* 195 B.R. at 273 (consonant with the concept of limited protection, SIPC may not advance funds for claims against the broker that do not fall within the narrow scope of a customer's net equity claim).

## B. *"Customer" Status*

Having rejected the estoppel argument, I move onto the balance of the Claimants' arguments, which are twofold: Stratton's status as an introducing broker does not exempt it from holding "customer" accounts and Stratton's failure to execute the Claimants' sell orders amounts to conversion of their securities. The Trustee and SIPC respond in unison, asserting that the Claimants are not customers because their accounts were not entrusted to Stratton and that "failure to sell" claims are not "customer" claims under SIPA.

■ Just as all creditors in a bankruptcy case who claim priority status have the burden of showing that they are entitled to the asserted priority under the Bankruptcy Code, the Claimants bear the burden of proving that they are the type of priority creditors known as "customers" and that the equity in their accounts is "customer property" under SIPA. *See Adler, Coleman,* 216 B.R. at 723; *Jackman v. SIPC (In re Brentwood Secs., Inc.),* 96 B.R. 1002, 1006–07 (9th Cir. BAP 1989); *In re Adler, Coleman Clearing Corp.,* 204 B.R. 111, 115 (Bankr.S.D.N.Y. 1997); *Hanover,* 55 B.R. at 240.

15 U.S.C. § 78*lll*(2) provides in relevant part:

> The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to a sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, . . .

15 U.S.C. § 78*lll*(2).The term "customer property" means:

> cash and securities (except customer name securities delivered to the customer) at any time received, acquired or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any property transferred by the debtor, including property unlawfully converted. . . .

15 U.S.C. § 78*lll*(4).

Flowing from these definitions, it is well established that SIPA protects customers of registered broker-dealers who have entrusted to those broker-dealers cash or securities in the ordinary course of business for the purpose of trading and investing. *See SIPC v. Executive Securities Corp.*, 556 F.2d 98, 99 (2d Cir.1977); *Baroff*, 497 F.2d at 282–83; *Morgan, Kennedy*, 533 F.2d at 1317 n. 4; *Adler Coleman*, 195 B.R. at 274; *Adler, Coleman*, 204 B.R. at 115; *Hanover*, 55 B.R. at 238. The Trustee and SIPC, on the one hand, and the Claimants, on the other, hotly dispute whether these Claimants entrusted their cash or securities to Stratton for the purpose of trading and investing in the securities market.

No one disputes that Stratton is an introducing broker and that, for the most part, J.B. Oxford was the fully disclosed clearing broker with respect to the Claimants' accounts. Introducing firms are usually broker-dealers without the financial resources or expertise to clear their own securities. Clearing firms are broker-dealers which, by agreement with one or more introducing firms, settle and complete trades. While the introducing firm continues to service the investor accounts, for example, by making investment recommendations or accepting investor orders, at least where the clearing firm's relationship is fully disclosed, as here, the investors rely upon the clearing firm to settle and complete their trades for them. (In a fully disclosed agreement, the introducing customer's name and address are disclosed to the clearing firm to enable the firm among other things, to prepare and furnish trade confirmations and monthly statements of account directly to the customer.) *See Adler, Coleman*, 198 B.R. at 73. In point of fact, investors with accounts at Stratton were required to enter into tripartite agreements with Stratton and its clearing broker.

A SIPA Proceeding is essentially a bankruptcy liquidation. *See Adler, Coleman*, 198 B.R. at 74; *Adler, Coleman*, 195 B.R. at 269 (citing cases). SIPA incorporates chapters 1, 3, and 5 of title 11 (all of which are also applicable in a chapter 7 case). *See* 15 U.S.C. § 78fff(b). A claim to which an objection has been filed is allowed to the extent the claim is enforceable against the debtor under applicable law. *See* 11 U.S.C. § 502(b)(1); *Adler, Coleman*, 198 B.R. at 74. The SIPC rules mandate that these Claimants do not possess preferential "customer" claims against Stratton, a result of which should be the disallowance of their claims. These rules have been approved by the SEC and, by statute, are accorded the same force and effect as if promulgated by the SEC. *See* 15 U.S.C. § 78ccc; *see also* H.R.Rep. No. 95–746, 95th Cong., 1st Sess. 25 (1977) (SIPC rules are to be considered legislative rather than interpretive and will have the force and effect of law). Pursuant to 17 C.F.R. § 300.200, "[a] person having one or more accounts cleared by the member on a fully disclosed basis for one or more introducing brokers or dealers is a customer of the member and shall be protected with respect to such account or accounts without regard to the protection available for any other account or accounts he may have with the member." *See* 17 C.F.R. § 300.200. Applied to this situation, this means that these Claimants are not "customers" of Stratton but rather of J.B. Oxford. Were J.B. Oxford to undergo a SIPA liquidation, these Claimants would more than likely be entitled to preferential "customer" treatment under SIPA.

Even were I to ignore the SIPC rules and conclude that these Claimants could fall within the ambit of Stratton's customers, the Trustee would still prevail on the present motion. "SIPC protects customers against those losses occasioned by a broker's liquidation", and in so doing, does not pretend to offer full compensation to all those injured by the brokerage's failure. *See Adler, Coleman*, 195 B.R. at 273; *see Morgan, Kennedy*, 533 F.2d at 1317 n. 4; *Packer,*

*Wilbur,* 498 F.2d at 983 ("SIPA was not designed to provide full protection to all victims of a brokerage collapse."); *Brentwood Securities,* 925 F.2d at 330; *Adler, Coleman,* 204 B.R. at 121. The Claimants argue exclusively that Stratton failed to execute sales of securities as instructed. This, they say, amounted to conversion of their securities, placing them within the definition of customers with claims. However, a failure to execute does not constitute a claim for conversion. *See SEC v. JNT Investors, Inc.,* 1978 WL 1137, *2 (S.D.N.Y. Feb. 9, 1978); *In re First State Securities Corp.,* 34 B.R. 492, 496 (Bankr.S.D.Fla.1983). Refusal to execute a sale order, be it intentional, willful or negligent, does not amount to the affirmative act required to establish conversion. *See JNT Investors,* 1978 WL 1137, at *2.

Those losses were not occasioned by the insolvency of the debtor. *See SEC v. Howard Lawrence & Co., Inc.,* 1 B.C.D. 577, 579 (Bankr.S.D.N.Y.1975). In addition, the law in this Circuit and elsewhere is clear that claims arising from a broker's failure to execute a sell order are general, unsecured breach of contract claims and not "customer" claims entitled to priority under SIPA. *See Adler, Coleman,* 195 B.R. at 275; *JNT Investors,* 1978 WL 1137, at *2; *Barton v. SIPC,* 182 B.R. 981, 985 (Bankr.D.N.J.1995); *In re First State Securities Corp.,* 34 B.R. 492, 496–97 (Bankr.S.D.Fla.1983); *Howard Lawrence,* 1 B.C.D. at 579 (SIPA does not protect customer claims based on fraud or breach of contract). The principles developed in these decisions were codified by SIPC in the "Rules Relating to Satisfaction of a 'Claim for Cash' or a 'Claim for Securities'", 17 C.F.R. Part 300.500 to Part 300.503, *see Adler, Coleman,* 195 B.R. at 275, which are to be given the same force and effect of a statute. *See id.* (*citing* 15 U.S.C. § 78ccc; H.R.Rep. No. 95–746, 95th Cong., 1st Sess. 25 (1977)). Thus, the failure to sell claims are not compensable under SIPA.

Accordingly, the Trustee's motion is GRANTED.[2]

---

2. An order consistent with this decision has already been entered.