Chris ARFORD, et al., Appellants,

v.

Harvey R. MILLER, Esq., As Trustee for the liquidation of Stratton Oakmont, Inc., Appellee.

No. 98 Civ. 9209 RMB.

United States District Court, S.D. New York.

Sept. 30, 1999.

Weil, Gotshal & Manges LLP, New York City, by Adam C. Rogoff, Jonathan S. Henes, for Harvey R. Miller, trustee for the Liquidation of Stratton Oakmont.

Maddox, Koeller, Hargett & Caruso, New York City, by Steven B. Caruso, Thomas A. Hargett, for Customer claimants.

### *ORDER*

BERMAN, District Judge.

This is an appeal from an order of the Honorable Tina L. Brozman, Chief United States Bankruptcy Judge, Southern District of New York ("Bankruptcy Court"), issued from the bench on October 19, 1998 and subsequently published as a written

opinion. *See Securities Investor Protection Corporation v. Stratton Oakmont Inc.*, 229 B.R. 273 (Bankr.S.D.N.Y.1999). In her opinion, Judge Brozman determined that fifty-seven claimants ("Appellants" or "Claimants")[1] were not "customers" as defined by the Securities Investors Protection Act ("SIPA" or "Act"), 15 U.S.C. § 78aaa *et seq.* and, therefore, were not entitled to the protections of that Act. There are two issues before this Court: (i) did the Bankruptcy Court err in determining that the Claimants were not customers for purposes of SIPA, and (ii) should the case be remanded to the Bankruptcy Court for further development of the record. **For the reasons set forth below, the Court answers both of these questions in the negative, affirms the decision of the Bankruptcy Court and denies the Appellants' request to remand the proceedings.**

## I. *Background*

The facts of this case are essentially undisputed. All of the Claimants were involved in a business relationship with Stratton Oakmont, Inc. ("Stratton Oakmont" or "Debtor"), a broker-dealer in the securities industry. Stratton Oakmont served as an "introducing broker" for the Claimants. All of the accounts established by Stratton Oakmont on behalf of the Claimants were handled on a "fully disclosed" basis by a second company, J.B. Oxford, the "clearing broker." Subject to written agreements entered into by Stratton Oakmont and the Claimants, all funds of the Claimants were held and traded by J.B. Oxford and no accounts were in the actual possession of Stratton Oakmont.

On January 24, 1997, Stratton Oakmont filed a petition for reorganization under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. Three days later, the Securities Investor Protection Corporation ("SIPC") filed an Application with the same Court asserting that the customers of Stratton Oakmont were entitled to and in need of the protections of SIPA. The Bankruptcy Court entered a "housekeeping order" directing the liquidation of Stratton Oakmont and establishing a claims process for "customers". In February 1997, claim forms were sent to 22,000 individuals who had engaged in business transactions with Stratton Oakmont. The Appellants completed and submitted those forms but their claims were denied by the Bankruptcy Trustee ("Trustee") on the grounds that those (*i.e.* Claimants) who alleged only that Stratton Oakmont had failed to sell their securities when requested to do so, were not customers under SIPA and, therefore, were not entitled to SIPA protections. The Claimants disputed the Trustee's determination that they were not customers and filed written objections with the Bankruptcy Court. The Trustee then sought and obtained a Bankruptcy Court order upholding the determination that the Claimants were not customers.

## II. *Analysis*

### *Jurisdiction*

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a)(1).

### *Standard of Review*

■ The District Court generally reviews the Bankruptcy Court's findings of fact under a "clearly erroneous" standard while it may consider its legal conclusions *de novo. See In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir.1996); *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994). Here, there do not appear to be any factual disputes between the parties.

**1.** The Appellants are fifty-seven individuals who opened accounts with the Debtor, Stratton Oakmont, prior to January 24, 1997. All of the Appellants utilized J.B. Oxford as their "clearing firm" but continued to make calls concerning their accounts to Stratton Oakmont. When Stratton Oakmont filed its petition in Bankruptcy, Appellants filed claims with the Bankruptcy Trustee which were subsequently denied on the grounds, among others, that they were not "customers" of Stratton Oakmont.

Similarly, the Bankruptcy Court relied upon undisputed facts in deciding the Trustee's motion. The legal issue before this Court is whether or not the Claimants were "customers" for purposes of SIPA.

### Determination of Customer Status

 Under SIPA, "customer" is a term of art and its everyday usage is not applied. *See In re Adler, Coleman Clearing Corp.*, 204 B.R. 111, 115 (Bankr. S.D.N.Y.1997); *In re Hanover Square Securities*, 55 B.R. 235, 238 (Bankr.S.D.N.Y. 1985) (citing *In re Stalvey & Associates*, 750 F.2d 464, 468 (5th Cir.1985)). The Act itself contains the following definition:

The term "customer" of a debtor means any person (including any person with whom the debtor deals as a principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such persons for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for purposes of purchasing such securities....

15 U.S.C. § 78*lll*(2). The statutory language creates a requirement that in order to be a customer for purposes of SIPA the debtor must "hold" the securities. In this instance, Stratton Oakmont merely served as an introducing broker and never held or was in possession of Claimants' property or securities.

Subsequently enacted legislation confirms this conclusion. In 17 C.F.R. § 300.200 Congress declared that:

A person having one or more accounts cleared by the member on a fully disclosed basis for one or more introducing brokers or dealers is a customer of the member and shall be protected with respect to such account or accounts without regard to the protection available for any other account or accounts he may have with the member.

17 C.F.R. § 300.200. The Claimants acknowledge that this provision makes them "customers" of the clearing broker, J.B. Oxford. They also assert that, because the word "only" is not contained within the section, they may also be considered customers of the introducing broker, i.e. Stratton Oakmont. However, Claimants offer no support for this proposition. In the absence of any specific mention or establishment of introducing broker liability, it cannot be concluded that Congress extended the protections of the Act to include introducing brokers. The Bankruptcy Court correctly refused to extend the protections of the Act beyond its' articulated scope, as defined by Congress. Referring to 17 C.F.R. § 300.200, Judge Brozman declared that, "Applied to this situation, this means that these Claimants are not 'customers' of Stratton, but rather of J.B. Oxford. Were J.B. Oxford to undergo a SIPA liquidation, these Claimants would more than likely be entitled to preferential 'customer' treatment under SIPA." *Securities Investor Protection Corporation v. Stratton Oakmont, Inc.*, 229 B.R. 273, 279 (Bankr.S.D.N.Y.1999).

 Indeed, SIPA was designed to protect the investors in the event of the collapse of an investment house. *See SIPC v. Executive Securities Corp.*, 1980 WL 1400, *1 (S.D.N.Y.) (citing Hearings on S.2348, S.3988 and S.3989, 91st Cong., 2d Sess. (1970)). In order to be entitled to the protections of the Act, Claimants must show not only that they entrusted securities to the brokerage house, but also that the losses they suffered were a result of that brokerage house's insolvency. *See In re Brentwood Securities Inc.*, 925 F.2d 325, 327 (9th Cir.1991). Here, the Claimants have demonstrated neither that they entrusted securities to Stratton Oakmont nor that their losses were a result of J.B. Oxford's insolvency. SIPA does not pro-

tect against all cases of alleged dishonesty and fraud. *Id.* at 330. As the Bankruptcy Court held, the Claimants here fail to meet the statutory definition of "customer."

### Conversion Claims

■ The Appellants also allege that they are entitled to protection as customers based upon their claim that Stratton Oakmont "converted" their property by "failing to execute" sale orders. They seek to rely on the following language: "The term 'customer' includes any person who has a claim against a debtor **arising out of sales or conversions of such securities** ..." 15 U.S.C. § 78*lll*(2) (emphasis added).

While SIPA does not specifically define the term "conversion", courts have held that "failure to execute" claims do not constitute conversion and are not entitled to preferred "customer" status under SIPA. *See, e.g., SEC v. JNT Investors, Inc.,* No. 72 Civ. 681, 1978 WL 1137 (S.D.N.Y. Feb.9, 1978); *In re A.R. Baron,* 226 B.R. 790, 796 (Bankr.S.D.N.Y.1998); *In re Adler Coleman Clearing Corp.,* 195 B.R. 266, 275 (Bankr.S.D.N.Y.1996). *See also In re Government Sec. Corp.,* 90 B.R. 539, 540–41 (Bankr.S.D.Fla.1988); *In re First State Sec. Corp.,* 34 B.R. 492, 496 (Bankr.S.D.Fla.1983); *SEC v. Howard Lawrence & Co.,* 1 B.C.D. 577, 579 (Bankr. S.D.N.Y.1975). Claimants suggest that, in the absence of a statutory definition, the Court should determine the meaning of conversion based on state law. This position is incorrect. The United States Supreme Court has stated that, " 'in the absence of a plain indication to the contrary ... Congress when it enacts a statute is not making the application of the federal act dependent on state law.' " *Mississippi Band of Choctaw Indians v. Holyfield,* 490 U.S. 30, 43, 109 S.Ct. 1597, 104 L.Ed.2d 29 (1989) (quoting *Jerome v. United States,* 318 U.S. 101, 104, 63 S.Ct. 483, 87 L.Ed.

640 (1943)); *NLRB v. Natural Gas Utility Dist. of Hawkins County,* 402 U.S. 600, 603, 91 S.Ct. 1746, 29 L.Ed.2d 206 (1971); *Dickerson v. New Banner Institute, Inc.,* 460 U.S. 103, 119, 103 S.Ct. 986, 74 L.Ed.2d 845 (1983). In *JNT Investors, Inc.,* 1978 WL 1137 at *2, the court held:

[c]onversion of stock, of course, generally involves an unauthorized sale of stock. Even assuming in the instant case the broker's refusal to execute [the claimant's] sell order was willful and intentional rather than negligent, ... it does not appear that his conduct constituted conversion. Generally some affirmative act is required to establish conversion; mere nonfeasance does not suffice.

Federal courts have consistently accepted the idea that conversion requires some sort of affirmative act, as opposed to a failure to act. *See Kubin v. Miller,* 801 F.Supp. 1101, 1118 (S.D.N.Y.1992); *JNT Investors, Inc.,* 1978 WL 1137 at *2. Breach of contract rather than conversion appears to be the appropriate legal theory where failure to act is involved. As the Bankruptcy Court correctly determined, the (alleged) injury to the Claimants did not result from the affirmative actions (conversion) of Stratton Oakmont. *See also SEC v. S.J. Salmon & Co., Inc.,* 72 Civ. 560 (S.D.N.Y. Oct. 3, 1973).

### Request for Remand

■ The Appellants also ask the Court to remand the proceeding to the Bankruptcy Court so that they may engage in further discovery. Granting this request would appear to serve no useful purpose. For the reasons set forth herein, Stratton Oakmont's alleged failure to sell remains outside the scope of SIPA protection. Further, the Claimants should not be granted additional discovery because, in the prior Bankruptcy proceeding, they stipulated that all relevant facts were mutually agreed upon and they failed to engage in discovery at the appropriate time.[2]

2. Before the Bankruptcy Court, Claimants asserted that the essential facts were not in dispute. *See* Trustee's Brief, note 15 (quoting the Hearing Transcript, at p. 19 and p. 21). Now, at the eleventh hour the Claimants are seeking to develop new information through

## III. *Conclusion*

For the reasons stated above, and having reviewed the legal issues decided by the Bankruptcy Court *de novo*, the decision of the Bankruptcy Court is hereby AFFIRMED.

discovery. These positions are openly inconsistent. The Appellants had ample time and opportunity to engage in discovery prior to and during the Bankruptcy proceeding.