MORGAN, Senior Circuit Judge:
 

 Resource Management (Resource) appeals the district court’s denial of its claim to customer status under 11 U.S.C. § 741(2)(A) or (B), and the denial of its alternative secured creditor claim. Resource seeks recovery of funds held by debtor/ESM Government Securities, Inc. (ESM) consisting of principal and interest on securities held by Resource, 56 B.R. 789 (S.D.Fla.1986). We agree with the district court that Resource fails to meet the criteria necessary to obtain either customer or secured creditor status and is therefore an unsecured creditor.
 

 I. FACTS AND PROCEEDINGS BELOW
 

 ESM, the debtor in this case, engaged in the purchase and sale of government securities as does appellant Resource. In January and February of 1985, Resource purchased certain Government National Mortgage Association Certificates (GNMAs) from ESM. These were purchased under a repurchase agreement, wherein ESM would sell the securities to Resource under the condition that Resource would resell the GNMAs to ESM at a certain time and price. Although it is not unusual for the dealer to retain the securities for the account of the repurchasing participant, thereby avoiding the bother of transferring the securities from seller to buyer and subsequently re-transferring them upon repurchase, Resource insisted upon holding the securities for itself until the repurchase was finalized. ESM would collect the principal and interest in the GNMAs and use this cash to pay Resource part of the repurchasing price, or as a form of liquidated damages if ESM failed to repurchase. The sales contract further held that Resource had a secured interest in these funds. At all times, Resource was ready to tender the GNMAs for repurchase to ESM. ESM subsequently informed Resource that it was unable to repurchase the GNMAs, and Resource was forced to sell them to a third party, receiving $420,000.00 less than it was to receive from ESM.
 

 On March 26,1985, ESM filed an involuntary Chapter 7 bankruptcy petition. The district court then withdrew reference of this case from the bankruptcy court and changed the petition into a stockbroker liquidation. A stockbroker liquidation differs from a Chapter 7 bankruptcy liquidation. Instead of general unsecured creditors receiving a pro rata share of the debtor’s assets after payment of priority claims, a separate fund of “customer property” [11 U.S.C. § 741(4) ] is created for the benefit of a separate class of “customers” [11 U.S.C. § 741(2) ], with the remainder to be distributed among unsecured creditors.
 

 
 *1376
 
 Resource filed its proof of claim to the fund in the amount of $608,121.05 in principal and interest, alleging its entitlement to customer and secured creditor status. Trustee Thomas Tew filed an objection to this claim. The district court for the Southern District of Florida sustained the trustee’s objection to Resource’s claim of customer status, holding that it did not meet the requirements of 11 U.S.C. § 741(2)(A). The district court also denied Resource’s secured creditor claim, holding that Resource held an unperfected secured interest in the principal and interest that was voidable by the trustee. Resource appeals this adverse ruling. The parties stipulated that New York law controls this case.
 

 II. DISCUSSION
 

 This case centers around two issues: (1) Is Resource a “customer” of ESM under 11 U.S.C. § 741, and (2) Is Resource a perfected secured creditor of ESM? Before each issue is dealt with in depth, a short discussion of the district court’s decision is necessary. The lower court stated that Resource must travel over the hurdles of both 11 U.S.C. § 741(2)(A)
 
 and
 
 (B).
 
 [1]
 
 This is an incorrect construction of the statute, as Resource would have had to entrust ESM with
 
 securities
 
 [§ 741(2)(A) ]. A “customer” is anyone who entrusts securities, cash
 
 or
 
 other property with the debt- or in connection with securities transactions, and loses said property due to the debtor’s insolvency.
 
 In re SSIW Corp.,
 
 7 B.R. 735, 739 (S.D.N.Y.1980). This case shows that Resource may claim customer status under § 741(2)(A) or (B). Therefore, this court will review Resource’s claims with a somewhat broader viewpoint.
 

 A.
 
 The Customer Claim
 

 To succeed with its claim to customer status and the greater privileges over the debtor’s estate which accompany this position, Resource must show that its transactions with ESM fit into the definition of a “customer” outlined in 11 U.S.C. § 741(2). Subsection (2)(A) allows customer status when securities are held for the purchaser by the debtor, therefore this does not apply to Resource. Resource claims that it fits within subsection (2)(B)(ii), in that the principal and interest claimed were deposits of cash to be used for purchasing or selling a security. This is an invalid application of the statute.
 

 Both parties agree that it is the act of
 
 entrusting
 
 the cash to the debtor for the purpose of effecting securities transactions that triggers the customer status provisions.
 
 Securities Investor Protection Corp. v. Executive Sec. Corp.,
 
 556 F.2d 98 (2d Cir.1977). The agreements concerning this cash must bear “the indicia of the fiduciary relationship between a broker and his public customer, [not] the characteristics of, at most, an ordinary debtor-creditor relationship.”
 
 Id.
 
 at 99 (quoting
 
 SEC v. F.O. Baroff Co.,
 
 497 F.2d 280, 284 (2d Cir.1974)).
 

 In the case at bar there is no “indi-cia of a fiduciary relationship.” ESM was not holding cash that rightfully belonged to Resource. As the contract pointed out, “the seller (ESM) shall be entitled to each payment of any principal of, interest in or any other amount payable on or with respect to any Securities.” ESM was to use this cash to repurchase the securities from
 
 *1377
 
 Resource, however, until then, the cash belonged to ESM not Resource. Subsection (2)(B)(ii) contemplates a situation where the purchaser gives money to a broker, etc., to purchase securities for said purchaser. This is not the situation in this case. Moreover, the fact that Resource contracted a security interest in this cash further convinces this court that there was no “entrustment” of funds and that this was an ordinary debtor-creditor relationship.
 

 Resource urges this court to follow the recent district court decision
 
 In re Bevill, Bresler & Schulman Asset Management Corp.,
 
 67 B.R. 557, Fed.Sec.L.Rep. (CCH) ¶ 92,966 (D.N.J.1986). This case holds that participants in repurchase and reverse repurchase contracts for the sale of securities and their resale back to the original seller at a future date are “customers.” We agree with the holding in this case, however, the facts of the Resource/ESM transaction are distinguishable. The
 
 Bevill
 
 case emphasizes the importance of the fiduciary relationship between the broker-dealer and its customers. In
 
 Bevill,
 
 the key factor for the court was that the debtor maintained specific trading accounts in which the securities, while owned by the purchaser, were held for the purchaser by the debtor/seller. On the other hand, the Resource/ESM deal made it clear that the principal and interest belonged to ESM, not Resource. Therefore, no fiduciary relationship existed. For these reasons, we find that Resource was not a “customer” of ESM under the provisions of 11 U.S.C. § 741(2)(A) or (B).
 

 B.
 
 The Secured Creditor Claim
 

 Resource’s alternative position is that it has a perfected security interest in the funds held by ESM. ESM granted Resource a security interest in all interest and other amounts payable from the securities. The main question is whether New York law would classify this interest as a general intangible. The district court found that the principal and interest funds were general intangibles, and that Resource did not file a financing statement on its secured interest in these funds. If these funds are general intangibles, a financing statement must be filed. N.Y.U.C. C.Law § 9-302 (McKinney Supp.1987). Conversely, if New York law would classify the principal and interest as the securities’ proceeds and if Resource owns these proceeds, no financing statement is necessary. N.Y.U.C.C.Law § 9-306(3) (McKinney Supp.1987).
 

 We agree with the district court that these funds are to be considered general intangibles. General intangibles are defined as “any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money.” N.Y.U.C.C.Law § 9-106 (McKinney Supp.1987). General intangibles include miscellaneous types of contract rights.
 
 [2]
 
 We hold that this includes the right to payment not covered under the definition of account.
 
 [3]
 
 Since Resource did not own the principal and interest at the time of the bankruptcy petition, it only had a right to payment of these funds which come within our interpretation of a general intangible. Therefore, Resource is an un-perfected secured creditor due to its failure to file a financing statement covering this right to payment.
 

 III. CONCLUSION
 

 Although the district court was erroneous in its interpretation of 11 U.S.C. § 741(2), we agree that Resource was not a “customer” of ESM since there was no basic fiduciary relationship between the parties as contemplated by the Bankruptcy Code. Furthermore, since the security interest covered a general intangible right to payment and necessitated the filing of a financing statement, Resource was not a perfected secured creditor of ESM. Conse
 
 *1378
 
 quently, Resource is only entitled to a pro rata share of the debtor’s estate equal to all other unsecured creditors.
 

 AFFIRMED.
 

 [1]
 

 . 11 U.S.C. § 741 (1979 & Supp.1986):
 

 (2) "customer” includes—
 

 (A) entity with whom a person deals as principal or agent and that has a claim against the such person on account of a security received, acquired, or held by the such person in the ordinary course of such person’s business as a stockbroker, from or for the securities account or accounts of such entity—
 

 (i) for safekeeping;
 

 (ii) with a view to sale;
 

 (iii) to cover a consummated sale;
 

 (iv) pursuant to a purchase;
 

 (v) as collateral under a security agreement; or
 

 (vi) for the purpose of effecting registration of transfer; and
 

 (B) entity that has a claim against a person arising out of—
 

 (i) a sale or conversion of a security received, acquired, or held as specified in subparagraph (A) of this paragraph; or
 

 (ii) a deposit of cash, a security, or other property with such person for the purpose of purchasing or selling a security;
 

 [2]
 

 .
 
 See
 
 Official Comment to N.Y.U.C.C.Law § 9-106 (McKinney 1964).
 

 [3]
 

 . "'Account' means any right to payment for goods sold or leased or for services rendered which is not evidenced by an instrument or chattel paper, whether or not it has been earned by performance." N.Y.U.C.C.Law § 9-106 (McKinney Supp.1987).