**In re OLD NAPLES SECURITIES, INC., Debtor.**

**SECURITIES INVESTOR PROTECTION CORPORATION, Applicant,**

v.

**OLD NAPLES SECURITIES, INC., Defendant.**

**Adversary No. 96–896.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

March 16, 1998.

Theodore Focht, Tampa, FL, trustee.

Donald Workman, Tampa, FL, K. Rodney May, Orlando, FL, for trustee.

## ORDER ON OBJECTIONS TO TRUSTEE'S DETERMINATIONS OF CLAIMS (DOC. NOS.26, 27, 28)

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a liquidation proceeding under the Securities Investor Protection Act of 1970 (SIPA). This SIPA liquidation proceeding commenced when the Securities Investor Protection Corporation (SIPC) filed an Application for protective decree in the United States District Court for the Middle District of Florida, Fort Myers Division. On August 28, 1996, the District Court entered an Order on SIPC's Application for protective decree and found that the customers of Old Naples Securities, Inc. (Debtor) were in need of the protection afforded by SIPA. Theodore F. Focht was appointed as Trustee (Trustee) for the liquidation of the Debtor. Pursuant to SIPA, the proceeding was removed to this Court commencing adversary proceeding 96–896. 15 U.S.C. § 78eee(b)(4).

Under SIPA, customers of the Debtor file written statements of claims with the Trustee but need not file a formal proof of claim, with some exceptions. 15 U.S.C. § 78fff–2(a)(2). After receipt of a written statement of claim, the Trustee promptly discharges all obligations of the Debtor to a customer relating to, or net equity claims based upon, securities or cash, by the delivery of securities or the making of payments to or for the account of such customer insofar as such obligations are ascertainable from the books and records of the Debtor or are otherwise established to the satisfaction of the Trustee. 15 U.S.C. § 78fff–2(b).

After SIPC has published notice of the institution of a direct payment procedure, whereby SIPC satisfies the customer claims directly without a liquidation proceeding, any person aggrieved by any determination of SIPC with respect to his claim may seek a final adjudication of such claim. 15 U.S.C. § 78fff–4. The bankruptcy court has original and exclusive jurisdiction of any civil action for the adjudication of such claim. 15 U.S.C. § 78fff–4(e).

In due course, Kevin Heebner (Mr. Heebner) filed his "Customer Claim" in the amount of $100,000.00, plus interest, which was received by the Trustee on November 8, 1996. (Trustee's Exh. 1). Likewise, Eileen C. Brown (Ms. Brown) and Merritt W. Brown, III (Merritt Brown) filed their "Customer Claims" in the amounts of $500,000.00 and $110,000.00, respectively. (Trustee's Exhs. 4 & 7). Mr. Heebner, Ms. Brown and Merritt Brown (collectively "the Claimants") were seeking protection as "customers" under SIPA. On May 30, 1997, after having reviewed these claims, the Trustee filed his Notice of Trustee's Determination of Claim and informed the Claimants that their Customer Claims did not qualify as such and were not entitled to coverage under SIPA. (Trustee's Exhs. 2, 5 & 8). In response, each Claimant filed an objection to the Trustee's Determination. (Trustee's Exhs. 3, 6 & 9). These objections are the instant matters under consideration by this Court.

The relevant facts as they appear in the record and through the testimony and presentation of exhibits at the final evidentiary hearing are as follows:

### CLAIM OF KEVIN HEEBNER

Mr. Heebner is a successful business man. He graduated from college with a degree in business management and now runs his own business. Through his business, Mr. Heebner became acquainted with one of his customers, Dan Schafer (Schafer).

A few years after they first met, Schafer suggested to Mr. Heebner that Mr. Heebner set up a retirement account for himself and

his employees. Schafer was a broker, employed by the Debtor. In 1992, Mr. Heebner set up the individual retirement accounts (IRAs) with the Debtor and, thereafter, spoke with Schafer annually about these accounts.

Other than the IRAs, Mr. Heebner had no dealings with Schafer until December 1995 when Schafer suggested to Mr. Heebner that Schafer had a "bond deal" which would yield a minimum of 10% interest annually. By the next day, Mr. Heebner needed to come up with $50,000.00, which would be returned with interest in one month. At Schafer's instructions, Mr. Heebner wired the money to Old Naples Financial Services, Inc. (Old Naples Financial). Old Naples Financial and the Debtor were owned and operated by the same person, James Zimmerman (Zimmerman). By mid-January 1996, Mr. Heebner received his initial investment plus $5,000.00 interest, thus, earning 10% in one month or 120% annually.

In February 1996, Schafer contacted Mr. Heebner again and asked if Mr. Heebner would be interested in buying more bonds. This time, however, the investment was $80,-000.00 and it was to earn 10% in one month with the Debtor. Just as before, Mr. Heebner wired the money to Old Naples Financial and in return, Mr. Heebner received a return of his investment, plus 10% interest in one month, for a total of $88,000.00.

In March or April 1996, Schafer contacted Mr. Heebner again. This time Schafer wanted Mr. Heebner to invest $100,000.00 which would earn 18% interest over three months. Mr. Heebner invested the $100,000.00 and about three months later, around the time the investment was to be returned, Schafer asked Mr. Heebner if he would be interested in buying additional bonds which would earn 24% annually. In doing so, Schafer would keep the money from the prior investment for another three months. Upon inquiring about the risk, Mr. Heebner was told, as always, that there was no downside because they were buying bonds.

Not surprisingly, Mr. Heebner never recouped his investment. Mr. Heebner had no knowledge as to what bonds were purchased, nor had he ever received any statements identifying the bonds. The "plan" was that Zimmerman would purchase bonds at a discount, which he would later sell and then split the profit with the investor. Actually, Zimmerman's business was losing money and he was borrowing money to stay afloat. Additionally, Zimmerman was borrowing money from one group of investors to pay back another group. Towards the end, Zimmerman just could not borrow enough money to keep the scheme going and the result was that the Claimants never recouped the funds entrusted to Zimmerman.

## CLAIM OF THE BROWNS

Merritt Brown, Jr. (Mr. Brown), Ms. Brown's husband and Merritt Brown's father, was the actual investor for these claimants. Mr. Brown had graduated from college with a degree in marketing and now owns a business which he started in 1980. Ms. Brown is a housewife with some college education.

Mr. Brown knew Schafer socially as well as professionally and in 1995, Schafer approached Mr. Brown to invest with the Debtor. Mr. Brown agreed to invest the minimum amount of $100,000.00 in his wife's name and was assured by Schafer that the investment was insured by SIPC and by the actual paper of the bond. Prior to August 1995, Mr. Brown had done most of his transactions with Smith Barney. However, this transaction was conducted through Ms. Brown's Howe Barnes' account. As he told Mr. Heebner, Schafer told Mr. Brown that the investment involved buying discount bonds and selling the bonds back at, or near, face value. Mr. Brown wired the $100,000.00 to Old Naples Financial as directed by Schafer and about thirty days later, $110,000.00 was deposited into Ms. Brown's Howe Barnes' account. Mr. Brown never saw the check.

At the suggestion of Schafer, Mr. Brown invested another $200,000.00 in addition to the first $100,000.00 which he "let ride." The $200,000.00 was wired to Old Naples Financial for a total investment of $300,000.00. Four or five weeks later, Schafer said Mr. Brown would be getting a check for $330,-

000.00, which was deposited into Ms. Brown's Howe Barnes' account.

Again, Mr. Brown got a call from Schafer and invested another $100,000.00, letting the first $300,000.00 plus the interest "ride." About six weeks later, Howe Barnes confirmed that $480,000.00 or $500,000.00 was placed in the account. Then, in January 1996, Mr. Brown reinvested the $500,000.00. The first month after this investment, $25,-000.00 was received and $10,000.00 was received in subsequent months. However, in August 1996, the investment failed. Mr. Brown was informed by Schafer that Zimmerman had stolen the money.

In addition to investing his wife's money, Mr. Brown invested $110,000.00 in his son's name, Merritt Brown. This money was sent to the Debtor for which cash receipts were issued. Merritt Brown received approximately $6,600.00 back on his investment.

All the Claimants received statements from Old Naples Financial. These statements showed the amount invested with the Debtor/Old Naples Financial and the year to date total. Additionally, these statements indicated an annual percentage rate of 24. However, these statements did not identify the securities involved.

Unlike Mr. Heebner, Mr. Brown received a letter from the Debtor, dated February 13, 1996, which referred to the investment as a loan and informed Mr. Brown that the money was to be held in an escrow account. (Trustee's Exh. 13). There is no evidence in the record, however, that any money was ever deposited "in an escrow account." Mr. Brown contacted Schafer in response to the letter but was told by Schafer not to worry about the letter. Mr. Brown, therefore, did not worry and simply relied on the profit to be earned by Zimmerman's purchase. This could be seen as a joint venture because Zimmerman and the Claimants were to share the profit. However, instead of sharing in any profit, all the Claimants lost their final investment.

It is the Trustee's contention that the claims filed by the Claimants are not "customer claims" entitled to SIPA coverage and at best, the claims could be considered gener-

al unsecured claims. The resolution of the issues raised by the objections to the Trustee's Determination of the Claims of the Claimants depends on the interpretation of a "customer." Under SIPA, a customer is defined as follows:

The term "customer" of a debtor means any person (including any person with whom the debtor deals as principal or agent) who has a claim on account of securities received, acquired, or held by the debtor in the ordinary course of its business as a broker or dealer from or for the securities accounts of such person for safekeeping, with a view to sale, to cover consummated sales, pursuant to purchases, as collateral security, or for purposes of effecting transfer. The term "customer" includes any person who has a claim against the debtor arising out of sales or conversions of such securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities, but does not include... (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or operation of law, is part of the capital of the debtor, or is subordinated to the claims of any or all creditors of the debtor, notwithstanding that some ground exists for declaring such contract, agreement, or understanding void or voidable in a suit between the claimant and the debtor.

15 U.S.C. § 78lll(2).

In order to have a claim as a "customer" under SIPA, the claimant must establish that he or she delivered money to a registered stock broker for the purpose of buying securities for his or her account. The proof presented in this case indicates that the Claimants' claims are based on their delivery of funds to the Debtor, or to an affiliate of the Debtor, for the purpose of earning a set interest rate for a fixed and stated term, coupled with a guaranty or other promise to return the investment funds upon resale of the bonds in order to share in the profits.

It appears from this record that the Claimants, with the exception of Merritt Brown, wired the investment to Old Naples Financial and not the Debtor. Thus, it would

appear that Mr. Heebner's and Ms. Brown's claims do not represent an obligation of the Debtor. However, based on the fact that Schafer was an agent of the Debtor and Schafer was their broker, the Claimants had no reason to know that they were not dealing with the Debtor. It is reasonable for the Claimants to have believed that the Debtor and Old Naples Financial were one and the same. In fact, the Debtor and Old Naples Financial had the same principal, and are both referred to by Zimmerman in his letter to Mr. Brown. (Trustee's Exh. 13). This Court is satisfied that the Claimants' dealings with the Debtor and/or Old Naples Financial should be viewed as dealings with the Debtor for purposes of these claims.

In *In re ESM Gov't Sec., Inc., v. Resource Management*, 812 F.2d 1374 (11th Cir.1987), the Court determined whether or not a claimant was a "customer" of the debtor under 11 U.S.C. § 741. The definition of "customer" contained in § 741(2) is based upon the definition of "customer" in SIPA. *See* 6 Collier on Bankruptcy ¶ 741.03[1], at 741–5. "A 'customer' is anyone who entrusts securities, cash or other property with the debtor in connection with securities transactions, and loses said property due to the debtor's insolvency." *ESM*, 812 F.2d at 1376, citing *Matter of SSIW Corp.*, 7 B.R. 735, 739 (Bankr.S.D.N.Y.1980). It is the act of entrusting the cash to the debtor for the purpose of effecting securities transactions that triggers the customer status provisions. *ESM*, 812 F.2d at 1376, citing *Securities Investor Protection Corp. v. Executive Sec. Corp.*, 556 F.2d 98 (2d Cir.1977). Additionally, the agreements concerning the cash must bear the "indicia of the fiduciary relationship between a broker and his public customer" and not merely the characteristics of a debtor-creditor relationship. *Executive*, 556 F.2d at 99.

■ There is nothing in this record to warrant a finding that the funds transmitted were for the purpose of purchasing any identifiable securities. However, the Claimants wired the funds with the intent that the funds be used for the purchase of discount bonds of some sort. There was no intention to loan these monies to the principal of the

Debtor and Old Naples Financial, Zimmerman. Although the promise to pay a set interest rate and to guaranty the return of the principal investment appear to be indicative of a loan, these characteristics are also similar to those of some types of bonds. This Court is satisfied that these Claimants entrusted funds to the Debtor for the purpose of purchasing bonds, which are securities. Therefore, the Claimants have satisfied the first requirement for customer status which is that the customer entrusted money to the debtor for the purpose of effectuating a securities transaction.

■ The second requirement, that the securities transaction contain the "indicia of the usual fiduciary relationship between a broker and its public customer" and not merely the characteristics of a debtor-creditor relationship, is also met. *ESM*, 812 F.2d at 1376. Had the Claimants loaned the funds to the Debtor, they would have had merely a debtor-creditor relationship. However, the circumstances of this case have convinced this Court that the Claimants entrusted the money to the Debtor for the purpose of purchasing securities and that the Claimants were public customers attempting to invest through the Debtor. Thereby, the usual fiduciary relationship between a broker and his public customer was created. Furthermore, customer status should not be denied for lack of due diligence. *See In re C.J. Wright & Co. Inc.*, 162 B.R. 597, 607 (Bankr. M.D.Fla.1993), citing *In re Gibralco, Inc.*, 53 B.R. 324 (Bankr.C.D.Cal.1985) (Customer status not denied for claimants' failure to question payments of interest from different operating accounts and for failure to receive confirmation slip). In sum, this record warrants the finding that the claims presented for this Court's consideration are entitled to SIPA coverage as "customer claims." Therefore, the objections to the Trustee's Determinations of Claims should be sustained and the claims filed should be allowed as customer claims.

■ Since no securities were in fact purchased, however, these claims are claims for cash for which the maximum advance from SIPC is $100,000.00 per customer. 15 U.S.C. § 78fff–3(a)(1). In determining the allowable

amount of customer claims for cash, this Court finds it appropriate to review the series of investments with the Debtor/Old Naples Financial for each claimant rather than merely reviewing the final investment upon which the Claimants' claims are based. The Claimants are entitled to no more than a return of principal. *C.J. Wright,* 162 B.R. at 609–610. Each claim must be reduced by the amount that the claimant received in "interest" payments. *Id.* at 610.

Mr. Heebner filed his claim in the amount of $100,000.00 plus interest. As stated above, the Claimants are entitled to no more than a return of principal so, Mr. Heebner's claim for interest is disallowed. Further, amounts earned on prior investments with the Debtor/Old Naples Financial for "interest" must be deducted from his principal claim of $100,000.00. On prior investments, Mr. Heebner received $13,000.00 in "interest" payments which should be deducted from his $100,000.00 claim, leaving Mr. Heebner with a customer claim for cash in the amount of $87,000.00.

Ms. Brown filed her claim in the amount of $500,000.00. The amount Ms. Brown earned on prior investments with the Debtor/Old Naples Financial for "interest" is $130,000.00, assuming the return on the third investment transaction was $490,000.00. Additionally, Ms. Brown received $35,000.00 as "interest" on the final investment. Thus, deducting these amounts from Ms. Brown's $500,000.00 claim leaves Ms. Brown with a $335,000.00 customer claim for cash.

Merritt Brown filed his claim in the amount of $110,000.00. He received $6,600.00 as a return on this investment. Deducting this amount from the claim amount of $110,000.00 leaves Merritt Brown with a customer claim for cash in the amount of $103,400.00.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Opposition of Kevin Heebner to the Trustee's Determination of Claim, the Objection to Trustee's Determination of Claim by Eileen C. Brown and the Objection to Trustee's Determination of Claim by Merritt W. Brown, III be, and the same are hereby, sustained. The Trustee's Determinations of Claims are hereby rejected and the Claimants' claims are hereby allowed as customer claims for cash in the following amounts: Kevin Heebner $87,000.00; Eileen C. Brown $335,000.00; and Merritt W. Brown, III $103,400.00.