**In re OLD NAPLES SECURITIES, INC., Debtor.**

**Securities Investor Protection Corporation, Applicant,**

v.

**Old Naples Securities, Inc., Defendant.**

**Adversary No. 96–896.**

United States Bankruptcy Court, M.D. Florida, Fort Myers Division.

June 15, 1999.

Theodore Focht, Tampa, FL, trustee.

Donald Workman, Tampa FL, K. Rodney May, Orlando FL, for Trustee.

Richard Johnston, Jr., Ft. Myers, FL, Lee Haramis, Jacksonville FL, for Claimant.

Williams Seckinger, Washington, DC, Jason Burnett, Jacksonville, FL, for Securities Investor Protection Corp.

## ORDER ON OBJECTIONS TO TRUSTEE'S DETERMINATIONS OF CLAIMS (DOC. NOS.29–36)

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a liquidation proceeding under the Securities Investor Protection Act of 1970, as amended, 15 U.S.C. §§ 78aaa et seq. (SIPA). The proceeding commenced when the Securities Investor Protection Corporation (SIPC) filed an Application for protective decree in the United States District Court for the Middle District of Florida, Fort Myers Division (District Court). On August 28, 1996, the District Court entered an Order finding that the customers of Old Naples Securities, Inc. (Debtor) were in need of the protection afforded by SIPA. Theodore H. Focht (Trustee) was appointed as Trustee for the liquidation of the Debtor under SIPA. Pursuant to SIPA, the proceeding was removed to this Court, commencing Adversary Proceeding No. 96–896. 15 U.S.C. § 78eee(b)(4).

The Court has original and exclusive jurisdiction over this action pursuant to 15 U.S.C. § 78eee(b)(4)(e) and the Order of the District Court, entered on August 28, 1996, removing this liquidation case to this Court. 15 U.S.C. § 78fff–4(e). On September 11, 1996, this Court entered its Order Regarding Publication of Notices, Procedures for Resolution of Claims and Other Relief, establishing a claims bar date, a procedure for the Trustee to notify claimants whether their claims would be allowed, in whole or in part, as "customer" claims under SIPA, and a procedure for

claimants to contest a determination by the Trustee.

The Trustee, pursuant to his obligations, initiated a claims process whereby creditors of the Debtor could seek remuneration for debts due and owing by the Debtor. It is in this claims process that the matters under consideration arose.

The specific matter under consideration is the determination of whether any of the following claimants are "customers" under SIPA, as defined by 15 U.S.C. Section 78lll(2):

Tessie C. Athens [Claim No. 124]

Stephen and Linda Compos [Claim No. 125]

Charles and Holly Conroy [Claim No. 132]

Patricia Fotopoulos [Claim No. 126]

John and Margaret Heist [Claim No. 127]

Theodore and Katina Kourpas [Claim No. 130]

David and Anita Linden [Claim No. 128] and

Peter and Debra Loupos' [Claim No. 129]

(collectively, Claimants). Each Claimant timely filed a Statement of Claim seeking protection under SIPA as a customer of the Debtor.

On June 5, 1997, after reviewing the claims, the Trustee notified the Claimants that he had determined that the Claimants' claims were not entitled to treatment as customer claims under SIPA and, thus, not entitled to the protection afforded to customers by SIPA. Each Claimant then filed an objection to the Trustee's Determination requesting a hearing. Upon reviewing the record and hearing testimony and argument of counsel, this Court now finds and concludes as follows:

At all relevant times, the Debtor was a securities broker-dealer and investment adviser registered with the Securities and Exchange Commission (SEC), subject to the rules and provisions of the Securities

Exchange Act of 1934, and was a member of SIPC. The Debtor's principal business office was in Naples, Florida, however, it had two branch offices located in Bethlehem and Wyomissing, Pennsylvania. The Debtor conducted securities trades through an intermediary clearing house, Howe–Barnes Investments, Inc. (Howe Barnes), located in Chicago, Illinois.

James A. Zimmerman (Zimmerman) was the president and sole owner of the voting shares of the Debtor during the period from 1992 through 1994. From approximately April 1995 and continuing at least through May 1996, Zimmerman solicited funds through Owen Shaffer, Dean McDermott (McDermott) and Stephen Compos (Compos), from more than thirty Pennsylvania investors. The funds were deposited into two checking accounts in the name of Old Naples Financial Services, Inc. (ONFS), a Florida corporation also owned by Zimmerman. ONFS was not a registered broker-dealer or SIPC member.

The Debtor's Bethlehem branch office was operated by McDermott and Compos, both registered representatives of the Debtor. In addition to operating the branch office, McDermott and Compos equally owned and operated Compos–McDermott Securities, Inc. (CMSI), an entity established to conduct an insurance business. CMSI is not registered as a broker dealer of securities with the SEC or the NASD as a securities firm.

McDermott and Compos solicited CMSI's clients' participation in eight of Zimmerman's transactions between May 1995 and May 1996. Most of the Claimants participated in the transactions repeatedly from May 1995 through May 1996. In August 1996 the Debtor ceased operating.

Each of the following Claimants timely filed their respective Statements of Claim asserting a customer claim in specific amounts, along with Attachments A and B and an objection to the Trustee's Determination. In general, each Attachment A provides, in pertinent part,

[Claimant] deposited monies with the debtor/broker-dealer, Old Naples Securities, Inc. (debtor), for the purpose of investing and trading in municipal bonds. Such bonds were to be purchased by pooling monies with other investors who deposited funds with the debtor and/or Old Naples Financial Services, Inc. (Old Naples Financial).

In general, each Attachment B, provides,

Discretionary authority given to Claimant's registered representative to determine the specific bonds to be purchased and the prices at which such securities were to be purchased and sold.

The claims under consideration are based on the misappropriation of funds by Zimmerman which had been deposited for the purchase of securities through the Debtor.

In each instance where the Claimants are a married couple, the husband made the decision to participate in the transactions at issue. In 1995 and/or 1996, each Claimant had a securities account established by the Debtor with Howe Barnes. The undisputed testimony is that each of the Claimants believed that Compos was their broker in the transactions that are the subject of the claims. Further, Compos solicited the investments in what he represented to be investment-grade municipal bonds. The Claimants transferred funds to the Debtor, through Compos, for the purpose of investing in the municipal bonds, although the Claimants delivered their funds without regard to when or at what price the bonds were to be purchased or sold.

### CLAIM NO. 124 OF TESSIE ATHENS IN THE AMOUNT OF $60,000:

In September, 1995, Compos solicited funds from Tessie Athens (Athens), a widow and retired school teacher, for participation in the transactions. Athens delivered three checks payable to "Old Naples" in the aggregate amount of $60,000 for the last transaction. On January 25, 1996, she wrote a check payable to "Old Naples" in the amount of $20,000 from an account at

Keystone Savings Bank. On the same date, she wrote a check in the amount of $10,000 from her Howe Barnes account. Finally, on February 28, 1996, she wrote a check in the amount of $30,000, also from her Howe Barnes account.

The purpose for the initial deposits is unclear. However, it is clear that the last transaction was for the intended purpose of purchasing municipal bonds, albeit the record is devoid of evidence of bonds having been purchased and registered in her name. Athens received an I.R.S. Form 1099–INT from ONFS showing the payment of $6,300 interest in 1995 for prior transactions.

### CLAIM NO. 125 OF STEPHEN AND LINDA COMPOS IN THE AMOUNT OF $85,000:

Stephen Compos (Compos) and his wife participated in six of the eight transactions from approximately September 1995 to May 1996. Compos' amended customer claim is for $85,000 for amounts due from various transactions. Compos received an I.R.S. Form 1099–INT from ONFS showing payment of interest in the amount of $13,280 in 1995.

### CLAIM NO. 111 OF CHARLES AND HOLLY CONROY IN THE AMOUNT OF $30,000:

Charles Conroy (Conroy), an engineer, is the founder of Conmec, Inc., a mechanical engineering company, which he sold in October 1997. He is still employed as its vice president. In April, 1996, Compos solicited Conroy's participation in the last of the eight transactions. On April 10, 1996, Conroy wrote a check in the amount of $30,000 payable to the Debtor from an account at Chemical Bank.

### CLAIM NO. 126 OF PATRICIA FOTOPOULOS IN THE AMOUNT OF $100,000:

Patricia Fotopoulos (Fotopoulos) owns and operates a hot dog stand in New Jersey. In July, 1995, Compos solicited Fotopoulos' participation. Fotopoulos participated in seven of the eight transactions from approximately July 1995 to May 1996. On or about February 28, 1996, Fotopoulos wired $100,000 from her account at United National Bank to ONFS for the seventh transaction. Instead of being repaid, the principal was invested in and rolled into the eighth transaction. Fotopoulos received an IRS Form 1099–INT from ONFS showing interest paid in 1995.

### CLAIM NO. 127 OF JOHN AND MARGARET HEIST IN THE AMOUNT OF $90,000:

John Heist (Heist), holding a bachelor and a masters degree in aerospace engineering, is employed by Conmec, Inc. In July 1995 Compos solicited Heist's participation in seven of the eight transactions. Heist and his wife participated in seven transactions from approximately July 1995 to May 1996. On February 28, 1996, Heist wrote a check payable to ONFS in the amount of $90,000 from his Howe Barnes account to participate in the seventh transaction. Instead of being repaid, the principal was invested in and rolled into the eighth transaction. Heist received canceled checks; Howe–Barnes statements showing his funds being withdrawn from or his returns being deposited to his money market account; and an I.R.S. Form 1099–INT from ONFS showing the payment of $11,550 interest in 1995. In November 1995 Heist received a check dated November 15, 1995, in the amount of $1,750 from ONFS. In December 1995 Heist received a check dated December 1, 1995, in the amount of $53,500, from ONFS.

### CLAIM NO. 130 OF THEODORE AND KATINA KOURPAS FOR $100,000:

In April 1996, Compos solicited the participation of Theodore Kourpas (Kourpas) in the eighth transaction. Compos said that in approximately one month the return would be about 7 percent. On April 13, 1996, Kourpas wired $100,000 from his Howe Barnes account to ONFS. Kourpas received Howe Barnes statements showing the withdrawal of $100,000. There is no evidence in the record to show that munici-

pal bonds were purchased and registered in the name of Mr. or Mrs. Kourpas.

### CLAIM NO. 128 OF DAVID AND ANITA LINDEN IN THE AMOUNT OF $60,000:

David Linden (Linden), holding a degree in mechanical engineering, is a director and vice president of engineering at Conmec, Inc. In December 1995 Compos solicited Linden's participation in the transactions. Linden participated in four transactions from approximately December 1995 to May 1996. On February 27, 1996, Linden wrote a check payable to the Debtor in the amount of $30,000 from his Howe Barnes account. On April 25, 1996, Linden wrote a check payable to the Debtor in the amount of $30,000 from an account at First Valley Bank. Linden received canceled checks; Howe Barnes statements showing the receipt of funds representing a return; and an I.R.S. Form 1099–INT from ONFS showing the payment of $1,400 interest in 1995.

### CLAIM NO. 129 OF PETER AND DEBRA LOUPOS IN THE AMOUNT OF $30,000:

Peter Loupos (Loupos) is a Senior Director of Information Technology for Research and Development at Rhone–Poulenc Pharmaceuticals. He has an undergraduate and a graduate degree. In April 1996 Compos solicited Loupos' participation in one transaction. On April 11, 1996, Loupos wired $30,000 from his Howe Barnes account.

At no time did any of the Claimants specify what bonds were to be purchased or at what price. It was each Claimant's understanding and expectation that the return of the principal plus a 7 percent return within a period of 30–45 days was guaranteed. Each of the Claimants seeks to have the Court determine that they are entitled to priority customer status under SIPA so that they will be entitled to reimbursement from SIPC for the amounts claimed.

The Trustee, however, claims that the Claimants are not entitled to customer status under SIPA. First, the Trustee contends that the Claimants either loaned the funds to the Debtor or ONFS, or purchased interests in an unregistered investment contract or profit-sharing agreement but, in any event, did not deliver the funds for the purpose of purchasing securities as that term is defined in SIPA. The Trustee also contends that since certain Claimants did not deliver their funds to the Debtor, but rather to ONFS, the Claimants do not qualify as customers of the Debtor. In addition, the Trustee asserts that in the event the Claimants are determined to be customers, then their claims must be reduced or offset by (a) the aggregate amount of returns that some Claimants received from all of the transactions, and (b) the payments totalling $16,000 made by CMSI to some of the Claimants after this proceeding began.

### LEGAL ANALYSIS

▆▆ SIPA is remedial legislation and should be construed liberally to effect the Congressional intent of protecting "those who entrusted cash or securities to their broker/dealer for the purpose of trading and investing." *See Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967). Its purpose is the protection of the insolvent brokers' customers. *In re First State Securities Corp.,* 34 B.R. 492, 496 (Bankr.S.D.Fla.1983). The definition of "security" under SIPA Section 78lll(14) includes, any . . ., bond, . . ., any investment contract . . . in any profit-sharing agreement . . . (if such investment contract or interest is the subject of a registration statement with the Commission pursuant to the provisions of the Securities Act of 1933 [15 U.S.C. 77a et seq.] ) . . . .

▆▆ SIPA provides customer status for claims based on misappropriation and unauthorized purchases. *In re C.J. Wright & Co., Inc.,* 162 B.R. 597 (Bankr.M.D.Fla. 1993). "Customer" is defined in SIPA as including,

> any person who has a claim against the debtor arising out of sales or conver-

sions of such securities, or *any person who has deposited cash with the Debtor for the purpose of purchasing securities,* but does not include ... (B) any person to the extent that such person has a claim for cash or securities which by contract, agreement, or understanding, or by operation of law, is part of the capital of the Debtor.... (emphasis added).

15 U.S.C. § 78111(2).

■ "A 'customer' is anyone who entrusts securities, cash or other property with the debtor in connection with securities transactions, and loses said property due to the debtor's insolvency." *In re ESM Gov't Sec., Inc.,* 812 F.2d 1374, 1376 (11th Cir.1987) (citation omitted). The Eleventh Circuit Court of Appeals in *ESM, supra,* set forth a two-pronged test for determining customer status, requiring claimants to show (1) entrustment of funds to the broker for the purpose of effecting securities transactions; and (2) that the agreements concerning the transaction contain indicia of the usual fiduciary relationship between a broker and its public customer. *Id.*

■ Here the Claimants reasonably believed that they were dealing with the Debtor, and the Claimants' dealings with the Debtor and/or ONFS will be viewed as dealings with the Debtor for purposes of these claims. *See In re Old.Naples Securities, Inc.,* 218 B.R. 981, 986 (Bankr. M.D.Fla.1998), affirmed 230 B.R. 441 (M.D.Fla.1999).

■ Turning to whether the Claimants are customers, the claims are based on their delivery of funds by check to the Debtor, or to an affiliate of the Debtor, for the purpose of the Debtor's purchase of investment-grade municipal bonds on their behalf. The Trustee argues that the transactions are more properly characterized as loans or purchase of equity in the Debtor.

At first blush, viewing the common thread of all of these transactions, the transactions do not have the hallmark of purchasing securities. There are no risk-free securities and no one can guaranty a return of principal within six months. The only securities where an investor receives a return of principal are certificates of deposit and possibly municipal or treasury bonds, albeit both are subject to market fluctuation.

Thus, it appears that the transactions under consideration are more akin to a loan granted to Zimmerman for the purpose of assisting him in buying and selling municipal bonds than to the purchase of securities by a customer.

■ There is no question that the Claimants intended to participate on an ongoing basis with the Debtor, through Compos, in the purchase and sale of municipal bonds with the expectation of reaping extraordinary profits and with the proviso that principal and interest promised would be guaranteed and returned within six months. Buying securities is one of the requirements to qualify as a customer under SIPA. *See ESM, supra.* However, the facts surrounding the Claimants' entrustment of funds begs the question—who bought these securities, the Claimants or Zimmerman? None of the Claimants have any documentation whatsoever to show that the securities were purchased on their account and on their behalf by Zimmerman; that they owned at any particular time any specific identifiable securities; or that they ever received a periodic statement informing them of the status of the account. None of the Claimants have receipts or acknowledgements of any purchase of securities by the Debtor.

This Court is satisfied that the Trustee's conclusion is correct and none of these Claimants qualify as a customer under SIPA. Nonetheless, they do have allowed unsecured claims against the Debtor.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Objections to Trustee's

Determination of Claim No. 124 filed by Tessie C. Athens; Claim No. 125 filed by Stephen C. and Linda M. Compos; Claim No. 126 filed by Patricia Fotopoulos; Claim No. 127 filed by John C. and Margaret L. Heist; Claim No. 128 filed by David H. and Anita Linden; Claim No. 129 filed by Peter M. and Debra J. Loupos; Claim No. 130 filed by Theodore D. and Katina A. Kourpas; and Claim No. 132 filed by Charles F. and Holly P. Conroy (**Doc. Nos. 29—36**) be, and the same are hereby, overruled. The Trustee's Determination of Claim is hereby approved. The Claimants are allowed general unsecured claims in the respective amounts claimed.