09-5296-bk
*In re Bernard L. Madoff Investment Securities LLC*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT.  CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1.  WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER").  A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the seventh day of October, two thousand and ten.

PRESENT: JON O. NEWMAN,
         GUIDO CALABRESI
         RICHARD C. WESLEY,
                   *Circuit Judges.*


ROSENMAN FAMILY, LLC,

        *Plaintiff-Appellant*,

    -v.-                09-5296-bk

IRVING H. PICARD, as Trustee for the SIPA Liquidation of Bernard L. Madoff Investment Securities LLC, SECURITIES INVESTOR PROTECTION CORPORATION,

        *Defendants-Appellees.*[*]

---

[*] The Clerk of the Court is directed to amend the official caption to conform with the caption above.

FOR APPELLANT:       HOWARD KLEINHENDLER, Wachtel & Masyr, LLP, New York, NY.

FOR APPELLEE:        DAVID J. SHEEHAN, Seanna R. Brown, Baker & Hostetler, LLP, New York, NY.

                     HERMANT SHARMA, Securities Investor Protection Corporation, Washington D.C.

Appeal from the United States District Court for the Southern District of New York (Buchwald, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

Plaintiff-Appellant Rosenman Family, LLC ("Appellant" or "Rosenman") appeals from a decision of the United States District Court for the Southern District of New York (Buchwald, *J.*), *Rosenman Family, LLC v. Picard*, 420 B.R. 108 (S.D.N.Y 2009), which affirmed a decision of the United States Bankruptcy Court for the Southern District of New York (Lifland, *J.*), entered on February 24, 2009, granting a motion to dismiss the Rosenman Complaint, *Securities Investor Protection Corp. v. Bernard L. Madoff Investment Securities LLC*, 401 B.R. 629 (Bankr. S.D.N.Y. 2009). We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The courts below prematurely determined that Rosenman

qualified as a "customer" under the Securities Investor Protection Act ("SIPA"), 15 U.S.C. § 78aaa *et seq.* We make no such determination at this time. However, we agree with the district court that the $10 million at issue qualifies as debtor property covered by SIPA. Therefore, Rosenman's complaint seeking declaratory and injunctive relief for the immediate return of the $10 million was properly dismissed.[1]

When considering a motion to dismiss under Federal Rule 12(b)(6), a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.") (internal quotation marks omitted). On review of a dismissal under Fed. R. Civ. Pro. 12(b)(6), we accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir. 2007).

---

[1] We review *de novo* the district court's conclusions of law. *See In re New Times Secs. Serv., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006).

The courts below detailed the relevant history and purposes of SIPA as well as the structure of a SIPA liquidation proceeding.  Generally, SIPA liquidations involve two kinds of claimants: customers and general unsecured creditors.  To protect customers of failed brokerages, their claims are satisfied from a customer property estate,[2] which is separate from the general estate used to satisfy the claims of general unsecured creditors. *See In re Adler Coleman Clearing Corp*., 195 B.R. 266, 270 (Bankr. S.D.N.Y. 1996).  To effectuate its purposes, SIPA accords "those claimants in a SIPA liquidation proceeding who qualify as 'customers' of the debtor priority over the distribution of 'customer property.'"  *In re New Times Secs. Serv., Inc*., 463 F.3d 125, 127 (2d Cir. 2006).  Customer property can further be supplemented "out of a special [Securities Investor Protection Corporation ('SIPC')] fund capitalized by the general brokerage community," *id*., which may provide up to $500,000 for each customer.  15 U.S.C. § 78fff-3.

To qualify as a customer, a claimant must have

---

[2] SIPA defines customer property, in relevant part, as: "cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the securities accounts of a customer, and the proceeds of any such property transferred by the debtor, including property

"deposited cash with the debtor for the purpose of purchasing securities."  15 U.S.C § 78lll.[3]  "[T]he critical aspect . . . is the entrustment of cash or securities to the broker-dealer for the purposes of trading securities."  *In re New Times*, 463 F.3d at 128 (quoting *Appleton v. First Nat'l Bank of Ohio*, 62 F.3d 791, 801 (6th Cir. 1995)); *see also In re ESM Gov't Secs., Inc.*, 812 F.2d 1374, 1376 (11th Cir. 1987) ("[I]t is the act of *entrusting* the cash to the debtor for the purpose of effecting securities transactions that triggers the . . . provisions."  (emphasis in original) (citing *Secs. Investor Prot. Corp. v. Exec. Secs. Corp.*, 556 F.2d 98 (2d Cir. 1977)); *Secs. Investor Prot. Corp. v. Stratton Oakmont, Inc.*, 229 B.R. 273, 279 (Bankr. S.D.N.Y. 1999) ("SIPA protects customers of registered broker-dealers who have entrusted to those broker-dealers cash . . . for the purpose of trading and investing.").  Other claimants to assets in the estate generally qualify only as general unsecured creditors and do not receive the benefit of

---

unlawfully converted."  15 U.S.C. § 78lll(4).

[3] 15 U.S.C. § 78lll was amended by the Dodd-Frank Wall Street Reform and Consumer Protection Act, Pub. L. No. 111-203, 124 Stat 1376, as of July 21, 2010. Even if the amendments were to apply retroactively, they do not affect the analysis of the present case because the operative definition above — "any person who has deposited cash with the debtor for the purpose purchasing securities" — remains intact.  15 U.S.C. § 78lll(b)(2)(B)(i).  SIPA citations are

supplemental funds from SIPC.

In all of the above cases, the courts were concerned with whether the putative investor attained customer status and thus qualified for preferred liquidation benefits under SIPA. They took for granted the preliminary question of whether the relationship between the claimant and the debtor gave rise to SIPA coverage in the first place.

In the present case, Appellant claims it is neither a customer nor a general creditor because, it asserts, the debtor never acquired title to the $10 million it wired to the debtor. Because the money never became the debtor's property, Appellant argues, it cannot form part of the bankruptcy estate; rather, Appellant claims, the money was stolen or embezzled. But none of the facts alleged in Appellant's complaint support such a conclusion, or any other conclusion that would exclude this money from the debtor's property under either New York or bankruptcy law. The $10 million was voluntarily transferred by the Appellant, was never diverted by the debtor, *cf. In re Newpower*, 233 F.3d 922 (6th Cir. 2000), and remained with the debtor. Accordingly, we need not consider whether New York or bankruptcy law applies. Under either, given the

---

to the statute prior to its amendment.

allegations in the complaint, the $10 million is part of the debtor's estate.

This also means that the funds are subject to SIPA. The complaint shows Appellant's intent to invest in the investment advisory fund of Bernard L. Madoff Investment Securities LLC ("BLMIS"). Appellant's $10 million deposit in BLMIS' JPMorgan Chase Bank account ("Chase Account") was executed for that purpose, even if Appellant contemplated that any such investment would not take place until January 2009 (less than a month after the deposit), and even if Appellant believed that further authorization would be required to effectuate the investment.

Furthermore, four days after Appellant deposited the $10 million, BLMIS sent Appellant a "Confirmation" form containing a customer account number and stating that, on behalf of Appellant's account, BLMIS had "sold short $10 million in U.S. Treasury Bills that mature on March 26, 2009."[4]  Complaint ¶ 12.  The statement contained an identification number for the transaction. *Id.* ¶ 13.

Neither the fact that Appellant did not authorize this purported trade nor the fact that the trade never actually occurred negate Appellant's SIPA status.  *See In re Klein,*

---

[4] Treasury Bills are "securities" as defined by SIPA.  15

*Maus & Shire, Inc.*, 301 B.R. 408, 419 (Bankr. S.D.N.Y 2003) ("The fact that the property is missing, perhaps due to unauthorized trading, does not affect 'customer' status.") (citations omitted); *see also Sec's and Exchange Comm'n v. S. J. Salmon & Co., Inc.*, 375 F.Supp. 867, 871 (S.D.N.Y. 1974) (holding that "[m]isappropriation would, of course, include the use of the customers' money to effect unauthorized purchases of securities" and thus, if the particular purchase of securities was found to be unauthorized, the claimant "would possess a valid customer claim").

Appellant's phone call with Madoff expressing interest in investing in the BLMIS fund, Appellant's wiring of the funds in accordance with that phone call, the confirmation of BLMIS' purported (though fraudulent) purchase of securities for Appellant's account, and the absence of any objection to that purported trade by Appellant all lead to the conclusion that Appellant willingly transferred its money to BLMIS in contemplation of engaging in ongoing business dealings with the brokerage.

In light of this conclusion, we need not discuss Appellant's other arguments. We similarly need not decide

---

U.S.C § 78*lll*(14).

7

today whether the $10 million in the Chase account qualifies for the added protection given to customers or is general creditor property under SIPA. Either way, SIPA governs.

To be clear, we are not holding that Appellant is entitled to customer status under SIPA, a ruling that cannot fairly be made in the absence of general creditors; we are holding only that the allegations are sufficient to invoke SIPA coverage, that the disputed money is property of the bankruptcy estate, and that the issue of whether Appellant is entitled to customer status remains to be determined.

For the foregoing reasons, the judgment of the district court is hereby **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

8