**Paul M. MITCHELL, Appellant,**

v.

**CHICAGO PARTNERSHIP BOARD, INC., Appellee.**

**No. 99 C 6531.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 2, 2000.

Stephen P. Harbeck, Kenneth J. Caputo, Securities Investor Protection Corp., Washington, DC, Daniel John Voelker, Brad Stephen Grayson, Schwartz & Freeman, Chicago, IL, Jill L. Uylaki, Barbakoff, Zazove & Glick, Chicago, IL, Mark Lawrence Prager, John R. Landis, Foley & Lardner, Chicago, IL, for Securities Investor Protection Corp., Chicago Partnership Board, Inc. and Paul M. Mitchell.

Jill L. Uylaki, Barbakoff, Zazove & Glick, Chicago, IL, for J. William Holland, Trustee for the liquidation of the business of Chicago Partnership Board, Inc.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge.

Before us is Paul Mitchell's appeal of an order of the Bankruptcy Court sustaining the trustee's determination that Mitchell's claim against the estate of the Debtor, the Chicago Partnership Board, Inc., is not that of a "customer" as defined in the Securities Investor Protection Act (SIPA), 15 U.S.C. § 78*lll*, but rather is a general unsecured claim. At issue are funds that Mitchell paid to the Debtor for interests in several limited partnerships to which he never received title because the Securities Investor Protection Corporation (SIPC) began liquidation proceedings against the Debtor before Mitchell's transactions were complete ($32,600 total), as well as interim distributions paid out by two of these limited partnerships that Mitchell never received due to the intervening liquidation (amounting to $3,375).

Because Mitchell seeks preferred creditor status as a "customer" under SIPA (giving him priority in the distribution of assets liquidated by the trustee and entitling him to advances from the SIPC fund), he bears the burden of proving that he fits within the statute's definition of that term. *See, e.g., SIPC v. Stratton Oakmont, Inc.,* 229 B.R. 273, 278 (Bankr. S.D.N.Y.1999), aff'd. sub nom. *Arford v. Miller,* 239 B.R. 698 (S.D.N.Y.1999). Both the SIPA Trustee and the Bankruptcy Court denied Mitchell's claims, finding that because the limited partnership interests in which he invested were not registered with the SEC, they are not the type of "investment contracts" that SIPA treats as "securities," so Mitchell did not give "cash [to] the debtor for the purpose of purchas-

ing securities" and thus is not a preferred "customer" for SIPA purposes. *See* 15 U.S.C. § 78*lll*(2) (defining "customer" as "any person who has a claim against the debtor arising out of sales or conversions of ... securities, and any person who has deposited cash with the debtor for the purpose of purchasing securities"). On appeal, we review the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*. *See, e.g., In the Matter of UNR Industries, Inc.,* 986 F.2d 207, 208 (7th Cir.1993). In this case the parties stipulated to most of the material facts—which are adequately laid out in the Bankruptcy Court's opinion, *see In re Chicago Partnership Board, Inc.,* 237 B.R. 726 (Bankr.N.D.Ill.1999)—so we will proceed to the legal analysis.

■ Like the Bankruptcy Judge and the SIPA Trustee before him, we conclude that Mitchell is not a SIPA "customer" because the limited partnership interests that he tried to purchase are not "securities" protected under SIPA. The statute defines a "security" as:

> any note, stock, treasury stock, bond, debenture, evidence of indebtedness, any collateral trust certificate, preorganization certificate or subscription, transferable share, voting trust certificate, certificate of deposit, certificate of deposit for a security, *any investment contract* or certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease (*if such investment contract or interest is the subject of a registration statement with the Commission pursuant to the provisions of the Securities Act of 1933),* any put, call, straddle, option, or privilege on any security, or group or index of securities (including any interest therein or based on the value thereof), or any put, call straddle, option or privilege entered into on a national securities exchange relating to foreign currency, any certificate of in-

terest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase or sell any of the foregoing, *and any other instrument commonly known as a security.* Except as specifically provided above, the term "security" does not include any currency, or any commodity or related contract or futures contract, or any warrant or right to subscribe to or purchase or sell any of the foregoing.

15 U.S.C. § 78*lll*(14) (emphasis added). The statute makes no reference to limited partnership interests, but Mitchell claims that the investments he made are protected by the act because they are "investment contracts," and he argues that they also can be considered "any other instrument commonly known as a security."

The Supreme Court defined "investment contract," for purposes of the Securities Act of 1933,[1] as "a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or third party." *Securities and Exchange Comm'n v. W.J. Howey Co.,* 328 U.S. 293, 299, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). Since then, in cases brought under the Securities Acts, the Seventh Circuit has found limited partnership interests to be investment contracts. *See Rodeo v. Gillman,* 787 F.2d 1175, 1177–78 (7th Cir. 1986) ("Generally, limited partnership interests satisfy the Howey criteria ... 'because, by definition, [they] involve[ ] investment in a common enterprise with profits to come solely from the efforts of others' "); *Goodman v. Epstein,* 582 F.2d 388, 406 (7th Cir.1978) ("A limited partner's interest in a limited partnership ... meets, on its face" all of the elements of a security as enunciated by the Supreme Court). And in this case, Mitchell himself characterizes the limited partnership interests as investment contracts, stating re-

---

1. We find the cases decided under the Securities Act of 1933 and the Securities Exchange Act of 1934 (collectively "the Securities Acts") to be instructive on this point because SIPA's definition of security was patterned after the definitions used in those statutes, with one critical exception that we will address shortly.

peatedly—in both the "stipulated facts" and "argument" sections of his brief—that the units he attempted to purchase from the Debtor were "investment[s] in a common venture, premised on a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of people other than Mitchell."

There is an important distinction, however, between the Securities Acts of 1933 and 1934 and SIPA, the statute governing this case. Under SIPA, an investment contract constitutes a security only if it "is the subject of a registration statement with the Commission pursuant to the provisions of the Securities Act of 1933." 15 U.S.C. § 78lll(14) (quoted in full above). The limited partnership interests that Mitchell attempted to purchase were not registered with the SEC, and Mitchell acknowledges as much in his briefs before this Court. Citing *Goodman*, he insists nonetheless that the limited partnership interests are protected by SIPA since they are recognized as securities under the other federal securities laws. But the *Goodman* case was governed by the Securities Exchange Act of 1934, under which an investment contract is a security whether or not it is the subject of a registration statement filed with the SEC. In defining "security" for SIPA purposes, Congress specifically added the element of registration with the SEC, making Mitchell's reliance on *Goodman* misplaced.

While the new SIPA definition of "security" was modeled after that of the 1934 Securities Act, "[t]hat definition is not followed exactly ... since the purpose of the 1934 act and SIPA are different." S.Rep. No. 763, 95th Cong.2d Sess. 17 (1978), *reprinted in* 1978 U.S.C.C.A.N. 764, 780. As the legislative history explains of the SIPA definition: "Commodity contracts and options relating thereto are excluded, as are investment contracts, profit sharing plans, and an interest or participation in oil and gas leases which are not issued in a distribution pursuant to a registration statement filed with the Commission under the provisions of the Securities Act of 1933." *Id.* At a congressional hearing on the 1978 SIPA amendments, then-Chairman of the SIPC Hugh Owens discussed the drafters' intention to modify the 1934 definition of security in recognition of the fact "that a definition tailored to the purposes of the 1970 Act [rather than the enforcement and regulatory purposes of the 1934 act] is necessary," and said:

> [T]he proposed definition excludes investment contracts and oil and gas interests which are not registered with the Commission under the Securities Act of 1933 since we have concluded that, while it is important to have them included in a definition for enforcement purposes, *they are not the types of investments which should be protected by SIPC.*

Hearing on H.R. 8331 Before the Subcomm. on Consumer Prot. and Fin. of House Comm. on Interstate and Foreign Commerce, 95th Cong., 1st Sess. 95–96 (Aug. 1, 1977) (statement of Hugh F. Owens, Chairman SIPC) (emphasis added).

While the question of whether unregistered limited partnerships are "securities" under SIPA is one of first impression in the Seventh Circuit, other courts have answered it in the negative. The Ninth Circuit found an attempted investment in a limited partnership that was not registered with the SEC not to be a security covered by SIPA, observing that "SIPA is carefully crafted, precisely delineating the category of investors it protects." *Brentwood Sec., Inc. v. Pepperdine Univ.*, 925 F.2d 325, 327, 329 (9th Cir.1991). The Southern District of New York also emphasized that SIPA recovery is limited and that the definition of "customer" entitled to such special protection should be construed narrowly. *See In re Omni Mutual, Inc.*, 193 B.R. 678, 680–81 (S.D.N.Y.1996) (citing *Securities Investor Protection Corp. v. Morgan, Kennedy & Co., Inc.*, 533 F.2d 1314 (2d Cir.1976)). In that case, the court took as a given that the limited partnership interests not registered with the SEC did not qualify as securities for SIPA purposes, and therefore concluded that the

investor was not a SIPA "customer" and thus was ineligible for the act's special protection. *See id.* at 681–82. We agree with these courts, and decline to construe the registration requirement as applicable only to certain types of investment contracts, as Mitchell would like us to do.[2]

■ It does not matter that the Debtor may have referred to the interests at issue as "securities" in some of its correspondence with Mitchell. As the *Omni Mutual* court explained, the investor's "subjective belief that the interests would be protected by SIPA, regardless of how reasonable that belief may have been, is not sufficient to find that [the Debtor] held his cash or that he had purchased a 'security' as those terms are defined by SIPA." *Omni Mut.,* 193 B.R. at 682. The court explained that under SIPA, " '[a]rguments based solely on the equities are not, standing alone, persuasive." *Id.* (quoting *SEC v. Packer, Wilbur, & Co.,* 498 F.2d 978, 983 (2d Cir. 1974) ("If equity were the criterion, most customers and creditors ... would be entitled to reimbursement for their losses. Experience, on the other hand, counsels that they will have to settle for much less. SIPA was not designed to provide full protection to all victims of a brokerage collapse.")).

Mitchell contends that we must interpret remedial statutes broadly, in favor of those who it was designed to protect, but the cases he cites in support of this proposition deal not with SIPA, but with an employment discrimination statute, an environmental protection statute, and an Indiana law on compensatory and punitive damages for shooting victims. Further-

more, the Seventh Circuit—albeit construing the Americans with Disabilities Act—specifically noted that courts should not interpret a remedial statute contrary to "the narrow, focused conclusion" that may be drawn from the statute's structure and logic. *See U.S. EEOC v. AIC Sec. Investigations, Ltd.,* 55 F.3d 1276, 1282 (7th Cir. 1995) ("A liberal construction does not mean one that flies in the face of the structure of the statute"). We decline to adopt Mitchell's liberal reading of SIPA, which would extend the protection of the statute to many more investors than Congress intended.

■ Finally, Mitchell argues that the limited partnership investments at issue should be considered "securities" under SIPA because they can be characterized as "any other instrument commonly known as a security." 15 U.S.C. § 78*lll*(14). This argument is totally lacking in support and is inconsistent with Mitchell's insistence that the limited partnership interests are investment contracts. (In his brief, he asserts time and again that the interests at issue "undisputedly involve an investment in a common venture, premised upon a reasonable expectation of profits to be derived from the entrepreneurial or managerial efforts of individuals other than Mitchell," reciting almost verbatim the Supreme Court's three-part test for determining the existence of an investment contract). If these investments could also be considered "any other instrument commonly known as a security," the "investment contracts" designation would be rendered surplusage and the requirement that such contracts

---

**2.** In his reply brief, Mitchell argues for the first time that the SIPA parenthetical requiring registration with the SEC for classification as a security applies only to investment contracts "in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease." In other words, rather than accept that in order to qualify as a security under SIPA, registration with the SEC is required of any: (1) investment contract; (2) certificate of interest; or (3) participation in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease, Mitchell reads the first part

of the clause as a disjunctive phrase ("investment contract *or* certificate of interest *or* participation") modified by the second part "in any profit-sharing agreement or in any oil, gas, or mineral royalty or lease." We disagree with this interpretation, which we find to be illogical, contradictory to the legislative history highlighted above, and far more strained than that adopted by the Ninth Circuit, the Southern District of New York, and the Bankruptcy Court of the Northern District of Illinois.

be registered with the SEC to be protected would be meaningless, defying the well-known canon of statutory interpretation endorsed by the Supreme Court in *Pennsylvania Dept. of Public Welfare v. Davenport,* 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990) ("Our cases express a deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment"). The Supreme Court has also advised that specific statutory terms should prevail over more general ones, *see Fourco Glass Co. v. Transmirra Prods. Corp.,* 353 U.S. 222, 228–29, 77 S.Ct. 787, 1 L.Ed.2d 786 (1957) ("the law is settled that 'However inclusive may be the general language of a statute, it will not be held to apply to a matter specifically dealt with in another part of the same enactment'") (internal citations omitted), and we recognize that catch-all phrases are meant to cover items that do not fall into more specific categories already enumerated in the statute. Because the interests at issue fit the definition of investment contracts, they do not fall within the coverage of the catch-all provision.

For the foregoing reasons, we affirm the decision of the Bankruptcy Court denying Mitchell's SIPA "customer" claim and allowing him to proceed with a general unsecured claim against the Debtor's estate. It is so ordered.